MATTHEW DOWD, an individual
PETER DEMIAN, an individual
EDWARD LA GROSSA, an individual
ANTHONY BROWN, an individual
NATHAN PINO, an individual
WILLIE LEE TURNER an individual,
DAVID 'ZUMA DOGG' SALTSBURG, an individual,
THOMAS BURRUM JNR, an individual,
MARVIN SIMS, an individual,
JESSE BROWN, an individual,
LOUIE GARCIA, an individual,
RENE CASTRO, an individual.

10 ½ 27th Place
VENICE, CA 90291
T. (310) 985-5436
E. matt2000dowd@yahoo.com

Plaintiffs in pro per

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

CV09-6731 AHm (RZ)

| | |
|---|---|
| MATTHEW DOWD, an individual; PETER DEMIAN, an individual; EDWARD LA GROSSA, an individual;  ANTHONY BROWN, an individual; NATHAN PINO, an individual;  WILLIE LEE TURNER, an individual;  DAVID 'ZUMA DOGG' SALTSBURG, an individual; THOMAS BURRUM JNR an individual; MARVIN SIMS, an individual; JESSE BROWN, an individual; LOUIE GARCIA, an individual, RENE CASTRO, an individual | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; REQUEST FOR DAMAGES

42 U.S.C. §1983;  Violation of First Amendment. Violation of Fourteenth Amendment. Unconstitutional Statutes.

Notice of Related Cases [Filed concurrently herewith] |
| vs.

CITY OF LOS ANGELES, a municipal corporation | Notice of Interested Parties [Filed concurrently herewith] |

9/16/2009 2:17:30 PM   Receipt #: 122660
          Cashier : KPAGE [LA 1-1]
Paid by: MATTHEW DOWD ET AL
2:CV09-06731
2009-086900        5 - Civil Filing Fee(1)
Amount :                        $60.00
2:CV09-06731
2009-510000      11 - Special Fund F/F(1)
Amount :                       $190.00
2:CV09-06731
2009-086400      Filing Fee - Special(1)
Amount :                       $100.00
Cash  Payment :                 350.00

## JURISDICTION AND VENUE

1. As this case involves questions which arise under the Constitution and the laws of the United States, the jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1331. The Court has jurisdiction to issue relief pursuant to the Declaratory Relief Act,  28 U.S.C. § 2201 and 2202. This court has jurisdiction to hear Plaintiffs' pendent state claim through the doctrine of supplemental jurisdiction set forth at  28 U.S.C. § 1367.

2.  Venue is proper for the United States District Court for the Central District of California under 28 U.S.C. § 1391 (b). Defendants reside in the Central District, and the acts and omissions complained of herein have occurred and will occur in the Central District.

## INTRODUCTION

3.  This is an action for damages, also injunctive and declaratory relief to enjoin enforcement of two municipal codes, and a section of City Council rules, adopted by the defendant City of Los Angeles (hereinafter "CITY"), all of which violate, or have violated, Plaintiffs' First, Fifth and Fourteenth Amendment rights.  Plaintiffs are artists and performers who are actively involved in expressive activities on the Venice Boardwalk ("BOARDWALK"). The defendant is a municipal corporation who enacts and enforces laws on the Boardwalk and within its public meetings.  Plaintiffs together allege past, present and future damages not only from the two beach vending ordinances (LAMC 42.15 2006, and 2008), but also from Rule 12 of the Los Angeles City Council Rules ("Rules of Decorum").

4. There are three parts to this action. All named Plaintiffs bring these claims for damages and injunctive and declaratory relief against LAMC 42.15 [2008] also known as Ordinance No. 179,807 Effective 5/19/08. (hereinafter referred to as "2008") . Plaintiffs DEMIAN, SALTSBURG, BROWN, TURNER, and JESSE also pray for damages and declaratory relief from LAMC Amended Section

2

1  42.15  adopted on March 25, 2006 as Ordinance Number 177337 (hereinafter

2  "2006"), and which is already suspended,  and DOWD and SALTSBURG

3  further claim damages and injunctive and declaratory relief from the Rules of

4  Decorum (hereinafter "DECORUM") adopted by the CITY and amended July

5  2009.

6  5. Plaintiffs contend and thereby allege that these aforementioned ordinances

7  and rules and their enforcement violate the First, Fifth and Fourteenth

8  Amendments to the United States Constitution and Article 1, Section 2 of the

9  California Constitution as impermissible prior restraints on protected expression

10  in a public forum. In addition, Plaintiffs contend and thereby allege that these

11  aforementioned ordinances and rules are not reasonable time, place and manner

12  regulations because they invite content-based decision making and do not leave

13  open ample alternatives for the desired means of communication. Plaintiffs also

14  contend that these aforementioned ordinances and rules are impermissibly vague

15  laws which thereby allow authorities unbridled discretion because of a  lack of

16  adequate guidelines to help describe those activities which are allowed or

17  denied.

18  6. This challenge is on both facial and as-applied grounds on all three challenged

19  statutes. The facial challenges on "2008" will focus on void for vagueness, the

20  lack of ample alternative means of communication, including challenges on the

21  additional 'PROGRAM RULES' which the CITY has adopted and enforced in

22  conjunction with "2008", which are not reasonable time place and manner

23  regulations; on vagueness and overbreadth grounds on "2006"; and on

24  vagueness, content neutrality and overbreadth grounds on the "DECORUM".

25  The as-applied challenges will be detailed separately in the factual information

26  as general applications, and as pertaining to individual Plaintiffs in specific

27  circumstances.

28

## PARTIES

7.   Plaintiff MATTHEW DOWD ("DOWD") is an individual who has been actively conducting expressive activities on the Boardwalk since obtaining a permit from the City in 2005. While known for promoting his original incense flavor, DOWD is also a well known musician and performer who sings and plays electric guitar. DOWD offers his three music CDs of his own recordings, on the Boardwalk. DOWD also accepts donations in an open guitar case. DOWD is also a political activist and often intertwines political messages with his music during a street performance. DOWD is also a communicator of news and information to other individuals regarding the ongoing Boardwalk litigation and regarding changes and details within the City vending ordinance. DOWD has also attended hundreds of Los Angeles City Council meetings to address the Council on political matters within that jurisdiction.

8.   PETER DEMIAN ("DEMIAN") is a street performer and musician who plays electrified guitar and sings using an amplifier and microphone on the Venice Boardwalk. He has performed continuously for 25 years. He sells his self titled CD of his own recordings, and also has a T shirt for sale which displays his name and his long time slogan "Street Smart". He accepts donations in an open guitar case.

9.   EDWARD LAGROSSA ("LAGROSSA") is a street performer and musician who plays guitar and sings using an amplifier and microphone on the Venice Boardwalk. He has performed continuously for 20 years on and around the Venice Boardwalk. He accepts donations in an open guitar case and offers a self titled CD of his own recordings.

10. ANTHONY BROWN ("BROWN") is a street performer rapper singer and spray paint artist who promotes African American achievement in history through his spray paint works and his hip-hop rap vocal performances. His songs strongly feature messages of peace and love and his Agape religious

4

philosophy. His art works on canvas and T-shirts feature images of famous philosophers and musicians with an additional message inscribed across each one. He accepts donations in a tip jar and offers his art work for a suggested donation.

11. NATHAN PINO ("PINO") is a street performer who plays an upright piano on the Boardwalk. PINO has been playing piano on the Boardwalk daily since 2006. He accepts donations in a bucket placed on the piano.

12. WILLIE LEE TURNER ("TURNER") a.k.a. 'SOLOMON' is a street performer who stands on a ladder while holding rubber snakes and issuing positive greetings to passers-by, intertwined with political statements about the state of the Union and the economy and the administration of government. He also rides a small unicycle as part of his show. TURNER has been street performing at the BOARDWALK for seven years.

13. DAVID SALTSBURG ("SALTSBURG") a.k.a. 'ZUMA DOGG' is a street performer who sings, dances and raps, and delivers comedy routines and lines to passers-by on the Boardwalk. SALTSBURG has been performing on the BOARDWALK for five years. SALTSBURG accepts donations for his performance in an open plastic container, and offers his DVD of his own TV public access show recordings, and his 'Zuma Dogg' T-shirt, which carries his name 'Zuma Dogg' and his character image. SALTSBURG has also attended hundreds of Los Angeles City Council meetings since 2006 to address the Council on political matters within that jurisdiction. During the course of his political activism SALTSBURG has run for Mayor of Los Angeles, and has made a run for a Los Angeles City Council seat.

14. THOMAS BURRUM JNR. ("BURRUM") is a street performer who plays guitar and sings using an amplifier on the BOARDWALK. He also accepts donations for his performances in an open guitar case.

15. MARVIN SIMS  ("SIMS") is a street performer who plays saxophone along with prerecorded backing tracks. He has been performing on the Boardwalk for seven years. He offers his original CD of instrumental tracks which are his own recordings.

16. JESSE BROWN (hereinafter "JESSE") is a street artist who creates his artwork on wooden skateboard decks, by burning an image into the wood using a magnifying glass and the sun. JESSE has been practicing this artwork on the Boardwalk since 2005.

17. LOUIE GARCIA  ("GARCIA") is a drummer and street performer who performs on the Boardwalk. He has been performing for one year. He also accepts donations via an open tip container.

 18. Defendant CITY OF LOS ANGELES ("CITY"), is a municipal entity, organized under the laws of the State of California with the capacity to sue and be sued. The CITY is the legal and political entity responsible for the actions of the officers and employees of the Los Angeles Police Department ("LAPD"), which enforces the ordinances in question, and is also responsible for the actions of the Department of Recreation and Parks ("DPR"), which adopts rules and regulations during the implementation of these ordinances, and which employs Boardwalk administrators to oversee permit holders' activities and report what they consider to be violations of the ordinances in question. The City is being sued in its own right and on the basis of the acts of its officers, employees, and agents which were taken pursuant to CITY custom and policy. At all times acting under color of state law.

**FACTUAL ALLEGATIONS**

**Part.1  LAMC 42.15 (2008)**

19. LAMC 42.15 (2008)  is a municipal ordinance which intends to regulate vending and excessive noise on City beaches, but more specifically Venice Beach, the traditional and official 'free speech' zone designated as such on the

6

West side of the Venice Boardwalk. This ordinance is the latest version in a series of similar ordinances which have failed constitutional scrutiny over the years and which have restricted protected activity and eventually been repealed and/or suspended. This latest version is Ordinance No. 179807, and was effected on May 19, 2008. Plaintiffs (except JESSE) are street performers who before the introduction of this ordinance positioned themselves along the seventeen blocks of traditional Boardwalk at locations where there are outdoor cafes, al fresco dining, or other listeners and observers to whom they could perform. The zone ordinance of "2008" allocates I and P spaces in front of many of the cafes, but more importantly, it denies the use of amplifiers on twelve out of the seventeen blocks on the Boardwalk. Many of the amplifier prohibition blocks contain these cafes where Plaintiffs were performing with permits issued by the City prior to May 2008. This current ordinance does not provide an ample alternative means of communication for these performers.

20. The eight most northern blocks of Venice Boardwalk have a complete ban on amplified music. These spaces on these blocks are all I zone designation, and are filled with vendors permitted by the City to vend items "inextricably intertwined with the speech of the vendor". Since all of the five 'amplifier allowed' blocks are designated within the P zone, all musicians and performers who use an amplifier must vie for space within those five blocks. Since that zone is designated by lottery, the street performers have to enter the lottery to win a space. The P zone lottery is also frequented by many vendors and other expressions which do not use amplified sound. These include psychic readers, henna tattoo artists and other vendors who may or may not qualify. Because of a lack of enforcement for many months of the donation requirement' in the P zone, many I zone permit holders moved back into the P zone and into the P lottery. The P zone lottery now contains vendors who display large photos, paintings, jewelry and clothing, and which common sense would conclude these

7

1   items are not being given away by donation, simply because they are
2   individually valuable items. The vendors display the sign "Donations accepted.
3   No contribution required." but display it in the most inconspicuous place
4   possible. A photographic record on Saturday June 13, 2009 showed forty nine P
5   spaces being occupied by jewelry, clothing, and paintings or photo vendors.
6   21.  Street performers often do not 'win' a space in the lottery. Only five blocks
7   in the P zone out of a total of nine are available to amplifier performers. This is
8   only fifty six spaces in total out of 105 P spaces. Eight are 'unassigned' non-
9   lottery spaces, and are also 'non-amplifier' These remaining 48 spaces out of a
10  Boardwalk total 205 spaces represents less than 25% of the Boardwalk open to
11  an individual with an amplifier. An amplifier is essential for speech, singing,
12  and because many musical instruments are electric. There is also abundant
13  ambient noise and amplified music blaring from commercial stores which will
14  drown out acoustic or a cappella performances. When the CITY allows other
15  expressions with photos and paintings and other I zone activities to take P zone
16  allocations in the lottery, it reduces the Plaintiffs' opportunity more
17  significantly. This now happens in every lottery. All of these amplifier spaces
18  are also next to each other which in itself is defeating for all users.

19  **PERFORMANCE SPACES**

20  22. Within the 100 space P zone, the City has designated five non lottery large
21  performance spaces of which four only are within the amplified sections. These
22  are the spaces remaining where a musician or performer can work once the
23  lottery spaces have been allocated. The first two of these spaces, A and B, are
24  taken daily by the same performers, who resist any other participants and who
25  rotate between themselves, doing large street theater comedy shows. Space D is
26  also commandeered by the same two performers, who intimidate or deter other
27  performers' participation. Plaintiffs in this action  (except artist "JESSE" ) are
28  all forced to congregate in Space C, because it is the only remaining Performer

Space which is available to them, is situated in front of a café, and in which they are allowed to use an amplifier. This space is designated first come-first served, and so often more than three or four  musicians including some of these Plaintiffs will all be trying to obtain performance time in this space. There have been times when up to eight of these named Plaintiffs have been required to 'rotate' performances in this space. SALTSBURG quit performing from the space completely for 8 months now because of the sometimes confrontational nature of rotating with numerous performers and arguments over priority and timing of each performer's show. Plaintiff DOWD has severely reduced his attendance because of the limited opportunity and the long wait between shows, sometimes up to 4 hours, when five performers are doing forty five minute shows each in that space.

23. When these individual Plaintiffs' do finally obtain a 'turn' in the Performance Space, they are often forced to quit their show when other spontaneous and noisy individuals walk down the Boardwalk and attempt to captivate the crowd of listeners already being addressed by the permitted performer who is confined in that performer space. The CITY contends that the ordinance is designed to protect musicians and other expressive speech, but then it does nothing to protect those musicians with permits, in a limited space, from these spontaneous non 'permitted' intruders.

**VOID FOR VAGUENESS**

24. The CITY has introduced an "I" zone which contains 100 spaces, and which has been designated for "P" activities, and for the sale of "expressive items created, written, or composed by the person", and for the sale of "expressive items inextricably intertwined with the speech of the person vending the item". This final sentence fails scrutiny because there are no guidelines to explain exactly what items or speech, or interaction of the two, would make an item "inextricably intertwined" with the speech. While the CITY does list items

which are acceptable in this zone, those listed items all qualify under the first consideration of 'items created, written or composed…" The listed items are books, cassette tapes, compact discs, digital video discs, paintings photographs and sculptures. The list of items states "these items may include, but are not limited to….". It is the "not limited to" items that need the guidelines. The listed items all contain pure speech components of either visual or oral speech. The "inextricably intertwined" designation contains no specific guidelines and as such allows unbridled discretion to the enforcing authority.

25. Since there are no specific guidelines on "inextricably intertwined", the CITY can and does issue permits, and conversely deny permits under this vague designation. Because the CITY has oversubscribed the I zone lottery, with vendors who may or may not qualify as "intertwined", many of the more traditional vendors who sell those actual listed items, including photos and paintings, have moved back into the P zone, into the P zone lottery, and are taking spaces which are on amplifier only blocks.

26. The CITY also does use this term "inextricably intertwined" when describing vending activities permitted outside of P zones and I zones.  LAMC 42.15 (1) (a) (ii) exempts specifically "any other item inextricably intertwined with the vendor's message", but fails to provide any explicit instruction as to how this standard works or is to be applied.

27. Subsection L of LAMC 42.15 2008 contains a heading "Definitions". Then, "For purposes of this section, the following words or phrases shall have the following meanings:  " . L (2) is "Inextricably Intertwined Speech Zones (I-Zones). ". The definition contained is a physical street location describing the I zones, followed by … "…in which the City will allocate spaces for the vending of expressive items that are created by the vendor OR inextricably intertwined with speech." Again, no direct or explicit guidelines to help one determine exactly what makes an item just '"inextricably intertwined with speech". Prior to

10

1 this definition the ordinance specified "inextricably intertwined with the
2 *vendor's* speech.

3 **UNCONSTITUTIONAL AS APPLIED.**

4 28. While the CITY has adopted the 2008 version of LAMC 42.15, it also has
5 adopted Program RULES with which the CITY will further regulate activity and
6 attempts to describe or translate the ordinance. These program rules in their
7 application failed constitutionality on many occasions.

8 DONATION SIGN REQUIRED IN I ZONE.

9 29. On the very first day of the new ordinance, after months of discussion, and
10 supposed outreach, the senior CITY official overseeing the enforcement of
11 42.15 [2008], instructed and mandated that all P zone AND I zone vendors
12 display a "donation" sign provided by the CITY. In fact, the ordinance only
13 requires that P zone vendors carry the sign. The I zone is for sales.

14 ITEMS OVER FOUR FEET TALL PROHIBITED.

15 30. Plaintiff DOWD was cited and prosecuted under the PROGRAM RULES
16 for allowing an item over four feet tall in a designated space. DOWD is a
17 performer who stands upright to play electric guitar and sing into a microphone.
18 DOWD stands six foot tall and requires a microphone stand approximately five
19 foot six inches tall. DOWD also uses stage 'props' during a performance, and
20 one is a cardboard life size cut-out of Disney singer Hannah Montana. The
21 figure stands around five foot tall. Children and others like to have their picture
22 taken with it, and DOWD refers to the image during comments he makes in
23 between songs. The image helps draw attention to DOWD's performance and
24 messages.

25 31. The RULES state in part, (Program regulations #6) "Items, such as,
26 structures, fixtures, furniture, tents, equipment or displays of any kind cannot
27 extend higher than four (4) feet above the ground, except an umbrella or sun
28 shade." . DOWD and other performers use microphone stands, ladders and other

11

equipment over four feet tall in order to perform a show, which would clearly violate the rules. One street performer, a juggler, performs his show atop a six foot high stepladder. An LAPD officer, however, only took exception to the cardboard cut-out display and insisted DOWD remove it or lower it. DOWD requested the citation be written because already the officer had ignored the almost six foot tall microphone stand, walked right by it in fact, to challenge the cardboard image. DOWD was cited for having a cardboard cut-out over four feet tall, and a microphone stand over four feet tall. (DOWD insisted the officer add the mic stand and not ignore it). DOWD was prosecuted for the image display being over four feet tall, but the microphone stand was ignored in the prosecution. The cardboard image itself was not even actually within a designated space but was standing alone nearby. CITY has refused to cite other performers who use items over four feet tall within a designated space. When prompted by DOWD for a reason why the other performers were not being cited for their items or equipment, the senior officer explained that there was 'no reason'. Another officer explained that a cardboard cut-out image and a 6ft ladder 'were two separate things' and so somehow that makes a difference. DOWD and the other performers continue to use their equipment (stands and ladders) which are over four feet tall, and are not being cited or prosecuted. DOWD has stopped displaying the cardboard image for fear of further prosecution.

PERFORMER ROTATIONS

32. CITY has designated five spaces as 'large group or performer only', defined as a show which 'has an average of twenty five or more spectators'. The RULES state in part that these spaces may be rotated between performers on the hour, but no guidelines are given as to exactly how many performers shall rotate, whether the performers can 'cap' the number of participants in the space, nor how an 'average' number of spectators can be assessed. On more than one

1  occasion LAPD officers arrived at the space and ordered certain performers to
2  vacate because there were not twenty five spectators on average and so the
3  performer was deemed not to be a large act.
4  Other acts were then awarded the space by the police. On another occasion when
5  DOWD and PINO were rotating within Space C with another third performer,
6  and had their names written in rotating order on a clipboard supplied by the
7  CITY, an LAPD sergeant, the senior beach patrol officer, responded to a
8  complaint from another performer and dictated performance times within the
9  space, and rearranged the order in the list which the Plaintiffs had already
10  established among themselves, given the blessing and the official clipboard
11  supplied by a CITY official. DOWD and PINO were threatened with arrest if the
12  officer's instructions were not followed with regard to performance times and
13  participants.
14  CD SALES ARE EXEMPT FROM THE DONATION REQUIREMENT
15  33. Plaintiff DEMIAN was performing in the Performer Space C in the P zone
16  when he was approached by an LAPD senior lead officer who ordered him to
17  remove the price of $15 from his sign promoting his original CD, and ordered
18  him to display the "Donations accepted. No contribution required." sign.
19  However, LAMC 42.15 2008 specifically exempts CD's and books from the
20  donation requirement. DEMIAN has been threatened with arrest and citation if
21  not complying with the order. This instruction came over nine months after the
22  introduction of the ordinance and was made by an officer who has written
23  dozens of citations on the BOARDWALK, and is considered one of the most
24  experienced in Boardwalk enforcement.
25  DEMIAN still is unsure about the regulation and is chilled in his activities with
26  regard to his price sign.
27  34. Plaintiff SIMS was performing in the P zone (#84) with his saxophone, and
28  was offering his CDs for sale as allowed by the statute. On May 23, 2009,

13

approximately a whole year after introduction of "2008", SIMS was cited by an

LAPD officer under 42.15 (B) (2)(c) "failing to display the sign "Donations

Appreciated, No Contribution Required". Citation No. 10795.

The ordinance though does provides an exemption for CD sales in the P-zones,

and a donation sign is NOT required in this instance. Although a first or second

offense is noted in the statute as an infraction, SIMS was cited on the ticket as a

Misdemeanor. It was his first citation.

AREAS OUTSIDE 0F P-ZONES AND I-ZONES

35. Plaintiff PINO was cited on August 09, 2009, for playing an acoustic piano

outside of the vending zones, and not in an assigned space. The ordinance

provides however as Subsection D (1) (b) states, in significant part: "Any

activity permitted in the P-zones may occur on the WEST side of the Boardwalk

outside of the P-zones, I-zones or pagodas so long as the activity is not vending

and does not substantially impede or obstruct pedestrian or vehicular traffic." No

mention is made in the citation about obstruction or impeding or vending, in

fact, the main notation on the citation concerns the fact that PINO is "asking for

tips in black hat".  Citation also adds that 'warned numerous times prior' which

would indicate that this application was repeated numerous times. Since PINO

was conducting a P zone permitted activity, was accepting donations, and was

tucked into a corner, his activity qualifies as permitted under 42.15 D (1) (b).

36. Plaintiff TURNER is the 'snake guy' who stands atop a four foot ladder and

cries out greetings and political statements to the public while holding fake

rubber snakes and wearing a loin cloth. The activity is spontaneous and

expressive, and is permitted P-zone activity but should also be permitted in

those other areas as described above and in 42.15 D (1) (b). TURNER has been

harassed and forced to leave the open square area in Windward Circle which

was his preferred location, and which qualifies as an expressive area under the

subsection D. Police have insisted and threatened with arrest if TURNER does

14

1  not restrict his activity to an actual designated space in a zone. Subsection D (1)

2  (b) also states in part : "….subject to reasonable size and height restrictions on

3  any table, easel, or *other furniture* in connection with that activity, as set forth in

4  the Program Rules." While the program rules give size and height restrictions on

5  "a table or easel", there is no guideline at all to describe what 'other furniture'

6  may be consisting of, or any guides to size or height restrictions which exist

7  specifically for that 'other furniture'. Therefore 'other furniture" is restricted or

8  allowed only by the term "reasonable". This is completely subjective and allows

9  discretionary enforcement.

10  NON-AMPLIFIED ZONE

11  37. Plaintiffs PINO and CASTRO can also perform acoustically without

12  amplifiers [PINO has a piano, and CASTRO has acoustic drums]. On one

13  occasion recently they entered the I-zone to perform near a café within permitted

14  hours, and without amplification of any kind. Shortly thereafter LAPD officers

15  attended the location on the basis of a complaint from a resident and threatened

16  these plaintiffs with citation and confiscation of equipment if they did not

17  immediately cease and desist the activity. At no time were any sound

18  measurements made and plaintiffs were performing in a designated space.

19  Rather than face criminal sanctions and/or confiscation, the plaintiffs ceased the

20  activity.

21  38.  LAMC 42.15 "2008" also makes reference to other City codes which are

22  enforceable with regard to noise. Subsection F (2) states in part: "…At all times,

23  the provisions of Chapter 11 of the Los Angeles Municipal Code, Sections 111

24  through 115, inclusive, and LAMC Sections 41.42, 41.57, 53.63, 63.44 relating

25  to noise shall apply. One of these codes

26  Sec.115. 02 (f)  states: "Sound emanating from sound amplifying equipment

27  shall be limited in volume, tone and intensity as follows:  1. The sound shall not

28  be audible at a distance in excess of 200 feet from the sound equipment.

15

2.    In no event shall the sound be loud and raucous or unreasonably jarring, disturbing, annoying or a nuisance to reasonable persons of normal sensitiveness within the area of audibility."

This language contains vague terms which by this statute could also be enforced on these Plaintiffs.

ENFORCEMENT AND INTIMIDATION

39. Subsection F of "2008" Part 1. states: No person….shall create any noise, or allow the creation of any noise which causes the noise level to exceed the following Lmax levels between 9.am and sunset…". This implies that excessive noise is prohibited between these hours. DOWD reads the ordinance as allowing other sound outside these hours as permitted by Part 2 of this subsection F, which allows enforcement of other codes relating to noise. One listed code is LAMC 63.44 and part 6.  provides:   "No person shall play any musical instrument between the hours of 10:00 p.m. and 7:00 a.m. within seven hundred and fifty (750) feet of any structure used for dwelling purposes, except within or upon an area or facility set aside for this purpose by the Board or Department. For purposes of this subdivision, the term "musical instrument" includes but is not limited to drums and other percussion devices."   One Sunday evening not long after sunset , and after waiting several hours, DOWD was playing electric guitar in Performer Space C with a large crowd of spectators when an LAPD patrol stopped and immediately ordered DOWD to quit the performance. DOWD resisted the order and requested a supervisor to help clarify the ordinance. The assembled crowd cheered but without other cause or concern the officer exited his vehicle and immediately placed DOWD in handcuffs. DOWD insisted that the rules were not clear regarding performer spaces, and that the CITY had recently amended the rules regarding that space, as DOWD had attended the City committee hearing to approve those changes. When the supervisor, the patrol sergeant , arrived, DOWD was released without citation,

16

1  but on the condition that he leave immediately and his particulars were recorded
2  from his legitimate government ID.
3  40. Two weeks later, on Aug 29, the same scenario unfolded with the same
4  patrol officer. When ordered to quit, DOWD asked the officer to write the
5  citation so that DOWD could have a day in court to decide the issue, and with
6  that citation DOWD would quit the activity. The officer immediately exited the
7  vehicle and informed DOWD that he would be taken straight to jail if he did not
8  comply, but on the grounds that DOWD did not carry California identification.
9  The officer did not examine any identification on this occasion and at this time.
10 He also threatened to 'take you down' physically during the arrest. Not wishing
11 to endure the said threats, DOWD succumbed to the orders and left immediately.
12 The viewing public at that time were dispersed.
13 CONTENT BASED ENFORCEMENT
14 41. Plaintiff JESSE BROWN is a street artist who also conducts P-zone activity
15 on the Boardwalk. "JESSE" occupies a designated space and is actively
16 promoting a nearby medical facility by displaying a four foot sign with images
17 and text, and by passing out flyers to members of the public. Police and City
18 parks staff have ordered him on more than one occasion to take down the sign,
19 because it has a 'commercial nature'. This is a content based decision made on
20 JESSE while he is conducting permitted activities within the P zone.
21 42. Other vendors in the P-zones have been ordered by police to remove NAG
22 Champa incense from their tables because it is commercially packaged and not
23 made by hand. This is a content based determination and there is no restriction
24 in the P-zone on any merchandise except food. The only requirement is that the
25 activity is conducted on a donation basis.
26 REASONABLE TIME PLACE AND MANNER
27 43. The PROGRAM RULES restrict any and all activity in a designated space to
28 the hours of 9a.m. to sunset. The sunset condition is not reasonable. Sunset time

changes every day and on many days thick marine layers on the beach prevent the visual observation. Sunset on Venice Beach is a key attraction, and many visitors will observe the sunset, then will make their way out of the park and along the Boardwalk. It is not reasonable to have expressions completely vacate the spaces by sunset which the ordinance proscribes and while the public still congregates in the area. Other parks in the City close one hour after sunset, including Dearborn Park, Ernest E. Debs Regional Park, Hansen Dam Recreation Center, Runyon Canyon Park, and Telfair Park. One hour after sunset is reasonable and the public and vendors will and do naturally make their way out during this one hour period as night and darkness begin to pervade the area.

## DUE PROCESS VIOLATIONS

44. While "2008" provides for penalties for the first two violations of this code to be simple "infractions", the PROGRAM RULES do go much further than the ordinance itself proscribes. The RULES mandate that upon a second notice of violation the permit holder is suspended from using the space, suspended from the 'next' lottery period, and suspended from any "walk-on" use of any spaces during that next period. It is effectively a ban from the Boardwalk, and is threatened by police as such. The rules though do also state in part "..If LAPD issues a criminal citation to a permit holder while in a permitted space, it will be treated as an administrative violation under the three-step enforcement plan *upon conviction or bail forfeiture*. Unfortunately the CITY has enforced these provisions before convictions or bail forfeitures have been recorded.

45. Plaintiffs DOWD, PINO and BURRUM were denied entry to the lottery on August 17, 2009 by City officials who had their names on a list supplied by the police. Plaintiff BURRUM had three live citations however none had been addressed in court, and no determinations had been made on the outcomes. BURRUM was informed that he was barred for a whole year due to his three

18

1 citations. DOWD and PINO had two citations on record each, but none had even

2 progressed to an arraignment even, at the time of the suspension.

3 DOWD, BURRUM and PINO stayed off the Boardwalk for a week for fear of

4 arrest or further loss of entitlement.

5 FIRST COME FIRST SERVED PERFORMER

6 46. Plaintiff DOWD has been cited at 8.45 a.m. while waiting for a first come

7 first served performer space which allows performances at 9a.m. DOWD was

8 not setting up, taking down or using the space as the ordinance describes: G (2)

9 (f). He was simply waiting, in fact, DOWD was not even present in the space

10 but was nearby across the Boardwalk. This performer space is designated first

11 come first served, and while not conducting any activity, DOWD was simply

12 registering his presence nearby to qualify under the first come first served

13 requirement. The space in question was also marked incorrectly at that time and

14 has since been repainted correctly by the CITY subsequent to this citation date.

15 This citation is one of the two citations which CITY used to ban DOWD for one

16 week.

17 PLAINTIFFS HAVE TO QUIT THEIR EXPRESSION

18 47. SALTSBURG has quit performing at Venice Beach since very shortly after

19 the introduction of "2008". SALTSBURG is a spontaneous performer and has

20 been harassed by the police for performing on a street, but has also been

21 harassed by other vendors and performers who wish to remove him from a

22 certain location so they themselves can occupy it. DOWD has persevered

23 although after some short breaks away from the chaos which revolves around

24 these rotating performer spaces, DOWD has finally quit performing at Venice

25 Beach after enduring a Labor Day weekend filled with uncertainty, inconsistent

26 rules and orders from the police, and confrontations and arguments with non-

27 musician street performers who also like to take away the spaces already

28 occupied by these Plaintiffs. Some of these other performers have a thug

mentality, and often intimidate musicians into giving up their time and space within that rotating space.

48. The police have ordered Plaintiffs not to step foot outside of the marked lines during a performance or they will be cited. Police have ordered Plaintiffs not to approach the outdoor café patrons after a show in order to ask for donations and offer CD's. Police have sent undercover vice officers to conduct undercover 'transactions' with performers, whilst the performer is in the middle of a song. Information from that undercover officer has then been used to cite performers for 'sales' or 'donation' breaches. DEMIAN has been forced to quit his expression at times, because upon arrival at the Boardwalk, he finds all spaces filled, and the queue of waiting performers would stretch beyond sunset, whereupon his performance would be in violation of the rules.

SUMMARY OF "2008"

49. Ordinance is void for vagueness because it uses terms like "inextricably intertwined" without specific guidelines to help authorities determine what this phrase means and how it should apply. Street performers with amplifiers are restricted to only five blocks along the entire Boardwalk of seventeen blocks so lack an ample alternative means of communication when those five blocks are also filled with non amplified vendors and inextricably intertwined, and sculptors, painters, and photographers allowed in by the CITY. Scrutiny of enforcement uncovers continual problems with application even after a full year of implementation, resulting in due process violations and First Amendment denials to selected individuals. Plaintiffs seek declaratory judgment, permanent injunction, and damages.

**Part. 2  LAMC 42.15 ("2006")**

50.  LAMC Amended Section 42.15 was adopted on Jan 31, 2006, as Ordinance No.177,337  effective March 25, 2006. ("2006") and then was

1  suspended from the code in July 2007, when CITY introduced an ordinance to
2  repeal provisions of "2006".  Plaintiffs BROWN, DEMIAN, SALTSBURG,
3  TURNER and JESSE were all restricted in their activities under the terms of the
4  2006 ordinance, and do seek damages, and declaratory relief to prevent the re-
5  introduction of those provisions suspended. There exists no guarantee from the
6  CITY that it will not re-introduce those provisions. While the CITY did prepare
7  an ordinance to repeal offending provisions of the 2006 ordinance, and sent it to
8  City Council for approval on July 13, 2007, the Council did continue the item
9  while relating status conferences continued in the district court, but when
10 approving the newer 2008 ordinance on March 26,2008, the CITY withdrew the
11 ordinance repealing those faulty provisions of "2006". The provisions  have still
12 not been repealed.

13 VOID FOR VAGUENESS

14 51. The BOARD of Recreation and Parks introduced a set of Program Rules by
15 which to enforce 177337, which were revised on March 15, 2006. ("2006
16 RULES").  In the opening paragraph of the 2006 RULES is stated: "…Section
17 42.15…. "prohibits" vending of any items having nominal utility apart from
18 their communication ….". In the second paragraph the opposite is maintained
19 and these same items ARE allowed: "Section 42.15(c) "allows" vending of
20 items that are inherently communicative and have nominal utility….". Paragraph
21 two then continues on to state that the items which may not be vended are items
22 which have MORE THAN nominal utility. These are three different statements
23 regarding utility. The terms 'inherently communicative' and 'nominal utility' are
24 vague. This language allows CITY officials to make a discretionary finding as to
25 the inherent communication versus the amount of utility of any particular item
26 of merchandise. While the ordinance lists items which it considers will fall into
27 this description, it lacks guidelines to adequately explain the connection between
28 these standards and how they can be enforced on items not listed. The ordinance

21

1 also deems an item to be 'more than nominal utility' and prohibited, if it has a

2 common dominant non-expressive use. A T-shirt may have a dominant use as

3 clothing, however the communicative value could be a far greater use for the

4 buyer and the vendor.

5 52. **Subsection (c) Exemptions.**  Subsection (c) which defines the activities

6 which are exempted from the overall ban on beach vending provides this

7 exemption: "Any individual or organization that vends the following items,

8 which have been created, written or composed by the vendor: books, cassette

9 tapes, compact discs, digital video discs, paintings, photographs, sculptures or

10 any other item that is inherently communicative and has nominal utility apart

11 from its communication." This language requires a CITY official to make a

12 determination on inherent communication of an item, and a further

13 determination of utility apart from the communication. This is impermissibly

14 vague. Subsection (c) (2) continues : "Although an item may have some

15 expressive purpose, it will be deemed to have MORE THAN nominal utility

16 apart from its communication if it has a common and dominant non-expressive

17 purpose." .

18 PERFORMERS ARE EXEMPT FROM VENDING BAN

19  53. **Subsection (c)(3)**  provides that performing artists and musicians are

20 exempt from the vending ban, however Plaintiffs DEMIAN, BROWN and

21 SALTSBURG were informed that vending or display of their T-shirts or any

22 other item with more than nominal utility, was prohibited, regardless of the

23 communicative quality, or even by the exemption on performers as provided in

24 the subsection. Plaintiffs above were ordered to remove their T-shirts from the

25 Boardwalk. DEMIAN has a shirt with his name and slogan "Street Smart" upon

26 it, SALTSBURG's T-shirt carries his character name, "ZUMA DOGG" and his

27 image, and BROWN displays shirts with African American images and political

28 messages inscribed upon same. Plaintiff JESSE, while not exempt as a

22

performer, was prohibited from selling or displaying his inscribed skateboard decks, because they were deemed to be more than nominal utility, regardless of the communication in the artwork inscribed upon them. They were ordered removed from display.

SPONTANEOUS EXPRESSION

54.   **Subsection (e)**  This section is identical to Section 1 D of ordinance 176270 ("2004" ordinance) and describes the mandatory requirement of a permit for an individual to receive money or accept donations in relation to expression on the Boardwalk in an allocated space. The exception was added in "2006" that an individual or organization may conduct exempted activities without a permit in an unoccupied space, but only after 12 midday. It is a prior restraint for a visiting performer, artist or politician, to be confronted with a legal contract to sign, accompanying rules and regulations to follow, the payment of a fee, and the issuance of a photo I.D., in order to display, communicate or otherwise conduct some expression when confronted with empty spaces on the BOARDWALK prior to 12 noon. This condition completely annihilates any spontaneous expression which an individual may otherwise have conducted absent these rules.

55.   Political, religious, philosophical and ideological expression can often be spontaneous, and the requirement to purchase a PERMIT with a photo I.D. is a fundamental restriction on First Amendment freedom of speech in a public forum which is open from 9.am.

Plaintiff TURNER was cited three times under "2006" because he was conducting spontaneous expression, which involves riding a small unicycle, and making political and social statements to the public in a large public area adjacent to the BOARDWALK. He was ordered to only conduct his expression within a 'performer' space as designated and allocated by the CITY under "2006".

DISPLAY IS PERMITTED

56.  Nowhere in the ordinance does it state that these "prohibited" items cannot be displayed. Permit holders are permitted to display their goods, and in fact proselytize the benefits of their products to the public. They are only restricted from selling them. If Plaintiffs' expression has been 'permitted' by the CITY, evidenced by the issue of Plaintiffs' expression permits, then this 2006 ordinance clearly does parcel out the commercial aspect of the speech. The CITY has  made arrests on individuals for display only. Vendor Michael Hunt was arrested in April 2006 for displaying items, as was another artist "Ibrahim", who was displaying artworks.

OVERBROAD

57.  LAMC 42.15  "2006" is not a reasonable time, place and manner restriction on protected speech because it is not narrowly tailored and it substantially burdens more speech than necessary to achieve the stated objectives of the CITY. "2006" requires permits be held for those individuals soliciting money and does not require a permit for individuals not soliciting money. There is no evidence that the solicitation of donations is more burdensome to the CITY'S interests than those activities that do not solicit.

**Part 3.  RULES OF DECORUM**

INTRODUCTION

58. The CITY of Los Angeles has a legislative body, the City Council, which does enact and enforce [through its designated servants] not only its ordinances within its codes, but also its Council Rules which in most part apply to its public meetings. The rules pertaining to the 'conduct' of those addressing the Council are called the Rules of Decorum and were amended in July 2009. Plaintiffs DOWD and SALTSBURG allege that these RULES are impermissible prior

24

restraints on free expression, are content based, vague, and thus do provide for

discretionary enforcement based on subjective analysis by the City Council

members. These RULES have and will continue to be used to chill, intimidate,

and deny free political expression to these Plaintiffs, without declaratory and

injunctive relief from the Court. The RULES implicate First Amendment rights,

and alleged breaches can result in criminal penalties, so RULES should be

subject to increased scrutiny with regard to constitutionality. Plaintiffs will also

make an as-applied challenge to the RULES.

FACTS

59. DOWD and SALTSBURG have been attending City Council meetings since

March 2006, after the CITY adopted the 2006 beach vending ordinance

complained about herein. These Plaintiffs have attended over one hundred

meetings per year in that time. Plaintiffs originally intended to redress the

government regarding the LAMC 42.15 ordinance, but after attending meetings

and examining agendas, Plaintiffs began to address other items out of concern

for the state of the City and its residents. SALTSBURG'S concern has

manifested into a run for Mayor of Los Angeles in 2009, where he ended up

fourth of ten candidates, and he is currently a candidate for a vacant City

Council seat in a current special election. DOWD and SALTSBURG have

addressed the City Council on many matters including Federal grant money, the

City budget, job cuts, the CITY'S loss of its pension funds, early retirements,

cuts in services, fee waivers, water and power rates, parking structures, liquor

licenses, tract maps for urban density, solar power, schools, education and

pollution, to name a few. While these Plaintiffs do address some items

favorably, many items deserve unfavorable reviews or comments, and it is

during these types of comments where Plaintiffs are unduly interrupted and

admonished or picked on based on the content of their speech, not on the

behavior of the speaker.

60. Rule 12 of the RULES OF DECORUM is being used to silence, interrupt, interject, distract, repress, chill, profile, and ultimately ban these two Plaintiffs while speaking out to the legislators in protest at the violations on the beach, and about other matters of concern to these Plaintiffs within the City of Los Angeles and on the City agenda. Many times a council member has interrupted the speaker, or the order of the meeting, and claimed that something said, or even being worn, was causing a 'disruption', even though that speech or activity may be protected. Plaintiffs have often been denied the right to speak at these public meetings. Others not before this court have also been subjected to discretionary enforcement under these RULES.

61. DOWD is currently barred from speaking at the City Council for thirty meetings based entirely on language which he used during his allotted comment time. DOWD was voted out for the maximum term allowed by the RULES. DOWD'S offending language was blurted out during comments he was making pointing out his increasing frustration with the CITY using vague terms in its beach vending ordinance, and not making any attempt to correct that ordinance. The Council president maintains that use of certain words, or the wearing of certain items of clothing, may cause a disruption if a Councilmember chooses to stand up and claim offense at the word or costume. This has happened on numerous occasions. An African American man wearing a KKK costume as part of his political protest was ordered to "remove" the hood, after a councilmember claimed he was "threatened" by it. When told by the President that only a disruption could be acted upon, the Councilman responded that it was not a disruption, but that he felt threatened by the man. The man was sitting quietly in the chambers in a peaceful and non violent way. The meeting was not disrupted at all until the Councilman stood up to claim he was "threatened".

62. SALTSBURG was banned from speaking at Council for two meetings after he referred to the Council as "losers" during a comment he was making about

26

the seven billion dollar lost pension funds. SALTSBURG is often interrupted and told his voice is too loud, even though Council chambers is a very large room, and the CITY has sophisticated sound amplification systems and an engineer broadcasting on Channel 35, and there are side conversations and general noise which a speaker wishes to be heard over.

STATE LAW REQUIRES PUBLIC COMMENT

63. Section 8. of the Council RULES states: *The Brown Act requires the Council to provide an opportunity in regular meetings for members of the public to address it on any non-agenda item generally considered to be a municipal affair and within the subject matter jurisdiction of the Council. This shall be referred to as "general public comment."..."* It was during this segment of the meeting in which DOWD was removed for his comment, and subsequently voted out by the Council, under Rule 12.

DECORUM

64. Section 12 of the RULES states , in part:  "12. Rules of Decorum: ***Changes adopted by the City Council on July 29, 2009***

a. Rules of Decorum. ...........Persons addressing the Council shall not make personal, impertinent, unduly repetitive, slanderous or profane remarks to the Council, any member of the Council, staff or general public.......".

The words slanderous, and profane, are impermissible. A comment could only be determined "slanderous" by a Court, furnished with facts relative to the alleged slander. The RULES allow the Council president, at his discretion to make a determination of "slander" and issue a warning or remove the speaker. The meeting is public and recorded, and there does exist already a mechanism available for an aggrieved party to make a claim against a speaker, in a civil action. "Profane" is also a vague term, and the RULES lack any guidelines to help determine which specific language falls into this category. While certain words may be unsavory, their use in an expressive way should not be chilled if

27

that expression is the preferred choice of the speaker to successfully make the point at hand.

65. Rule 12 continues in part with : " nor utter loud, threatening, personal or abusive language, nor engage in any other disorderly conduct that disrupts, disturbs or otherwise impedes the orderly conduct of any Council meeting." The words "loud" and "abusive" invite subjective decision making without any specific guidelines as to when a speaker has become too loud, or exactly what kind of language constitutes "abusive" language. Many comments directed at a poor performance of the Council could easily be construed as "abusive". Both of these terms can easily be used by Council President to interrupt or interfere with delivery of speech.

ENFORCEMENT

66. Section 12 b of the RULES states:  " ... b. Enforcement of Decorum. At the discretion of the Presiding Officer or upon a majority vote of the Council, the Presiding Officer may order removed from the Council Chamber any person who fails to observe these rules of decorum, including committing any of the following acts of disruptive conduct in respect to a regular, adjourned regular or special meeting of the City Council. Disorderly, contemptuous or insolent behavior toward the Council or any member thereof, tending to interrupt the due and orderly course of said meeting;" .

Here the words "contemptuous", and "insolent" are impermissibly vague and lack any express guidelines as to their interpretation or application. They are purely subjective terms, and could easily be used to eject or disrupt a speaker making comments concerning the performance of a councilmember or a City department or service under the authority of the Council or a member. It would only take a councilmember to stand and claim insolence or contempt, and thus claim a 'disruption' which then 'interrupts' the due and orderly course of the meeting. Plaintiffs contend that the Councilmembers create the disruption to the

28

meeting by interrupting the speakers with these kinds of claims based on this vague terminology.

## LAWFUL AUTHORITY ALREADY EXISTS

67. Part (b) of Enforcement continues: " These enforcement provisions are in addition to the authority held by the Sergeant at-Arms to maintain order pursuant to Rule 80 and pursuant to his or her lawful authority as a peace officer."  The RULES then clearly indicate that there does exist already lawful authority with the sergeant-at-arms attending the meeting, with which to take action against actual disturbances that violate the peaceful and civil conduct of a public meeting such as the City Council.

## PENALTIES APPLIED WITH VAGUE AND SUBJECTIVE TERMS

68. Section 12 c of the RULES states:  " c. Penalties. Any person who has been ordered removed from a meeting may be charged with a violation of Penal Code Section 403, or other appropriate Penal Code or Los Angeles Municipal Code sections. In addition, any person so removed on the basis of disruptive conduct described above may not be allowed to address the Council for up to a maximum of thirty (30) meeting days of the Council during which the Council has convened in regular session. The period of prohibition from addressing the Council will be determined by the Presiding Officer, or the Council upon a vote, based on the number and severity of prior incidents of disruptive conduct." DOWD was issued the maximum penalty under the RULES, a thirty meeting denial of speech rights, based on "the number and severity of prior incidents" as the RULES provide. "Severity" is the vague term here, and is completely subjective. What may be a severe incident to one person, may not at all be severe to another. When DOWD was voted out for thirty meetings, that vote was taken instantly, by a motion introduced on the floor of the Council. No numbers of prior incidents, or examination of severity were introduced before the vote. The vote was not unanimous.

## UNCONSTITUTIONAL AS-APPLIED

## BOOING IS CAUSE FOR REMOVAL

69. On one occasion DOWD was removed from the meeting without warning for booing a councilman at his introduction to the floor. The councilman claimed foul, and the President ordered DOWD removed from the chambers for the day. No similar action is or was ever taken on persons who cheer or clap or make other spontaneous noises especially if those noises are of a supportive nature. DOWD'S spontaneous and momentary comment was considered a 'disruption', although there would have been no disruption to the meeting if the Councilman had just accepted the boo, along with the applause.

## RULES PROTECT COUNCIL, BUT NOT PUBLIC

70. Rule 9 of the RULES states: " *9. No person shall be permitted to interrupt Councilmembers or the Clerk during a Council meeting.*"  Plaintiffs note that there is a rule protecting interruptions of Councilmembers, but no protection against interruptions on public speakers. Many times one particular Councilmember has jumped up out of order and interrupted DOWD or SALTSBURG based on the content of the speech, not on any kind of disruptive behavior. The majority of these interjections are dismissed after a short discussion between President and member, however the clock still ticks away at the Plaintiff's time, and the flow of the speaker comment is lost. The persistent nature of these kinds of interruptions can drive up the level of frustration and consequently, the speaker can become more animated and forceful with his tone and language. This can result in a perceived breach of the rules, and allow the President to conclude the speaker's time based on that breach.

INTERRUPTED TO FILL IN A CARD COMPLETELY

71. Council rules only require that a speaker card contain a name or moniker to identify the speaker and to call that speaker in order. DOWD attended a recent

CITY committee meeting where amendments to LAMC 42.15 2008 were being discussed and filled his card with his name and the item number.

DOWD was called to speak, however only thirty seconds into a most important comment, the committee chair, the same councilmember responsible for interruptions in chambers, stopped DOWD mid comment and told him he needed to complete all the information requested on the speaker card. [Information includes address and phone number, among other details]. DOWD had to inform the chair that these additional bits of information were not 'required' according to the City attorney. The committee chair responded again that he "liked" to have them all filled in.

The result is a deliberate disruption to the flow and train of thought of the speaker. Because DOWD is a political activist who distributes information, written and verbally, to other permit and non permit holders, regarding the status of local litigation and appeals decisions which can directly affect the beach environment, and because he stands up for the rights of vendors and performers, he is often targeted with this kind of harassment

RACIAL SENTIMENT IS PROHIBITED

72. A speaker who referred to himself using a racial epithet was removed based on the utterance of the word, and not by any action or threat towards the public or the City Council during that speaker's comment period. The CITY has made a public resolution to ban the use of the word in the City of Los Angeles, however it is largely a symbolic gesture, and not grounds at any time to remove a speaker, based on that choice of language when required to illustrate the speaker's point, which in that instance was the ongoing discrimination against beach vendors.

NOT ALLOWED TO SAY CO-PLAINTIFFS NAME

73. DOWD is a co-plaintiff in a district court case parallel and preceding this current action. His co-plaintiff in that action is Michael Hunt. The defendant is

the CITY. DOWD often speaks about that action but DOWD has been warned that he will be removed if he refers to his co-Plaintiff by his name "Mike Hunt". Mike is a family name used by close friends but when DOWD has referred to him with that name, he has been ordered to refer to him as Michael Hunt or Mr Hunt, or face removal from the meeting.

PROFANITY ACCEPTABLE IF "EXITING"

74. DOWD was removed from speaking at City Council for thirty meetings, because of his use of a "profanity". DOWD did however conduct himself in an identical fashion to a speaker who used the same "profanity" a few weeks earlier, but without admonishment from the CITY. That speaker used the "profanity", and then proceeded to leave the podium. When DOWD questioned the lack of enforcement during his next public comment, the attorney responded on the record, that because the "profanity" was uttered and then the speaker was exiting, then it would be "more of a disruption to admonish, than not." DOWD also began exiting immediately after his utterance, however Council did deem it necessary to open debate about DOWD, about his utterance, and then moved to deny DOWD for thirty meetings, and take that vote. DOWD was exiting because he was already flustered by the interruption prior to his utterance, and because his utterance was significant enough to satisfy DOWD'S requirement that the message be delivered. DOWD left the building without need for police escort and no other action was taken.

DISRUPTIONS ARE TRANSFERABLE

75. The Council President holds the discretion to issue "warnings" to members of the public who are in breach of the RULES. SALTSBURG was arrested and charged under PC403 even though he himself was not in breach of that code. Other public speakers, who had spoken before SALTSBURG, had elicited warnings from the Council president. Then SALTSBURG delivered a rather animated public comment, and did not attract any warnings. Upon returning to

32

his seat, he was approached by a sergeant-at-arms, who told him to "Be quiet".
SALTSBURG responded with "Relax. I'm not doing anything". The officer then
immediately grabbed SALTSBURG, placed him in handcuffs and marched him
into custody and charged him with "disturbing the peace".

CONTEMPT FOR CIVIL RIGHTS ACTIONS

76. Councilmembers have risen and stated on the record that civil rights actions
are frivolous, and lack credibility [made in reference to prior 42.15 challenge by
HUNT and DOWD], and ought not be taken seriously. All plaintiffs strongly
disagree, and urge the Court to treat civil rights claims under Section 1983 with
the respect and scrutiny that the law and Constitution demand. Plaintiffs have
been disenfranchised, demoralized and dehumanized by the enforcement of
these codes and rules complained of herein. Plaintiffs do not make these
allegations in fun. Real criminal sanctions, and loss of speech rights are
involved. Plaintiffs are street performers and artists and political advocates who
have standing to make these allegations. Plaintiffs seek swift and conclusive
relief to satisfy their requests.

**FIRST CLAIM FOR RELIEF**

**Unconstitutional Statutes**

**(Violations of First, Fifth, and Fourteenth Amendments: 42 U.S.C. §1983)**

77.   The above allegations in paragraphs 1 through 57 above are
incorporated into the First Claim for Relief as though fully set forth herein.

78.   LAMC §42.15 as amended in 2008 (Ordinance 179807) is an
unconstitutional statute. The ordinance and the related Public Expression Permit
Program violate the First Amendment because they contain provisions which
constitute impermissible prior restraints on public expression in a quintessential
public forum. The terms in these provisions are vague and lack adequate

33

standards or guidelines for enforcement. LAMC 42.15  [2008] is not a
reasonable time, place and manner restriction, because the means chosen are
substantially broader than necessary to achieve the government's interest.

79.  LAMC Sec. 42.15 as amended in 2006 (Ordinance 177337) is an
unconstitutional statute. §42.15 (2006) and the related Public Expression Permit
Program Rules violate the First Amendment because they contain provisions
which constitute impermissible prior restraints on public expression in a
quintessential public forum. The terms in these provisions invite content-based
decision making, lack required procedural safeguards, and contain vague
terminology. The CITY does not have adequate standards or guidelines to limit
the unbridled discretion of CITY officials in enforcing this ordinance.

80.  LAMC §§42.15 (both 2008 and 2006), their associated Program Rules,
and the challenged sections of LAMC 63.44, violate Plaintiffs' right to freedom
of speech protected by the First Amendment and made applicable to the States
and Local Government by 42 U.S.C. 1983. The acts complained of herein were
directed towards intimidating Plaintiffs' from the lawful exercise of their
Constitutional rights.

81.  The failure to enact laws that give reasonable notice of criminally
penalized activities and the failure to adopt precise standards and guidelines by
which to guide CITY officials in applying "2008" and "2006"  violates
Plaintiffs' rights to Due Process under the First and Fourteenth Amendments.

82.  As a consequence of these actions, Plaintiffs have been impeded in
their efforts to carry out constitutionally protected activities as described above,
and, accordingly, have and will suffer damages as a result of Defendant's
actions.

83.  Absent relief from this Court, Plaintiffs will suffer irreparable harm.
Plaintiffs' right to freedom of speech will continue to be violated. There is a

1  very real threat of imminent future violations of Plaintiffs' First Amendment
2  rights.

3      84.   There is an actual controversy now existing between Plaintiffs and
4  Defendant concerning the Venice Beach permit scheme, including whether
5  Plaintiffs will continue to be threatened with criminal prosecution if their
6  intended activities are deemed by the City to not be in compliance with all
7  applicable ordinances and their implementing rules and regulations.

8      85.  Plaintiffs have suffered damages as a direct result of the actions of the
9  DEFENDANT. Plaintiffs have lost their opportunity to perform freely on the
10  Venice Boardwalk. DOWD, PINO and BURRUM were "removed" from the
11  lottery without lawful reason. All plaintiffs [except JESSE] have suffered direct
12  monetary loss from lack of performance time. DOWD, BROWN, PINO,
13  BURRUM, SIMS, and TURNER have been criminally cited. Prosecutions are
14  pending and imminent.

15

16              **SECOND CLAIM FOR RELIEF**

17              **Injunctive and Declaratory Relief**

18         **RULES OF DECORUM ARE UNCONSTITUTIONAL**

19      86.   The above allegations in paragraphs 58 through 76 above are
20  incorporated into the Second Claim for Relief as though fully set forth herein.

21      87.  The Rules of Decorum and their enforcement violate the First
22  Amendment because they contain provisions which constitute impermissible
23  prior restraints on  speech. The terms in these provisions are vague and lack
24  adequate standards or guidelines for enforcement. There exists unbridled
25  discretion of CITY officials in enforcing these RULES.

26    88.  The RULES OF DECORUM violate Plaintiffs' right to freedom of speech
27  protected by the First Amendment and made applicable to the States and Local
28  Government by 42 U.S.C. 1983. The acts complained of herein were directed

towards intimidating Plaintiffs' from the lawful exercise of their Constitutional rights.

89.   The failure to enact laws that give reasonable notice of criminally penalized activities and the failure to adopt precise standards and guidelines by which to guide CITY officials in applying the RULES violates Plaintiffs' rights to Due Process under the First and Fourteenth Amendments.

90.   As a consequence of these actions, Plaintiffs DOWD and SALTSBURG have been impeded in their efforts to carry out constitutionally protected activities as described above, and, accordingly, have and will suffer damages as a result of Defendant's actions.

91.   Absent relief from this Court, Plaintiffs will suffer irreparable harm. Plaintiffs' right to freedom of speech will continue to be violated. There is a very real threat of imminent future violations of Plaintiffs' First Amendment rights.

92.   There is an actual controversy now existing between Plaintiffs DOWD and SALTSBURG and Defendant CITY concerning the ability to speak freely at these public meetings, including whether Plaintiffs will continue to be threatened with criminal prosecution if their intended activities are deemed by the City to not be in compliance with all applicable rules and regulations.

93.   Plaintiffs have suffered damages as a direct result of the actions of the DEFENDANT. Plaintiffs have lost their opportunity to speak freely without interruption or admonishment. SALTSBURG has been charged and convicted

**PRAYER FOR RELIEF**

**Wherefore, Plaintiffs request judgment as follows:**

1. For a permanent injunction enjoining DEFENDANT, its agents, servants, employees, and successors in office, and all persons acting in cooperation with

the CITY, or at the CITY'S direction or control, from enforcing the ordinances and regulations described herein and above.

1.  For a declaratory judgment that LAMC §§ 42.15 (both 2006 and 2008), the additional "Program Rules" and the challenged sections of Council Rules violate the First, Fifth and Fourteenth Amendments to the United States Constitution.

2.  For a declaratory judgment that LAMC §§ 42.15 (2006 and 2008), and the challenged sections of Council Rules violate Article 1 § 2 of the California Constitution.

3.  For a declaratory judgment that LAMC §§ 42.15 (2008), and the challenged sections of Council Rules are "unconstitutional as-applied".

4.  For an Order directing that all Notices of Violations and citations issued pursuant to a purported violation of LAMC §§ 42.15 since January 31, 2005 to the present date, and COUNCIL RULES, through the enforcement of these ordinances and their associated PROGRAM RULES, be expunged in any and all files maintained by the CITY.

5.  For damages against the CITY as permitted by law and according to proof at trial, in favor of Plaintiffs

6.  For any further relief as this COURT deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on their damages claim.

1

DATED: Sept. 15, 2009     Respectfully submitted,

2

3                                     MATTHEW DOWD,
                                      PETER DEMIAN,
4                                     EDWARD LA GROSSA,
                                      ANTHONY BROWN,
5                                     NATHAN PINO,
                                      WILLIE LEE TURNER,
6                                     DAVID SALTSBURG,
                                      THOMAS BURRUM JNR.,
7                                     MARVIN SIMS
                                      JESSE BROWN,
8                                     LOUIE GARCIA,
                                      RENE CASTRO.
9

10                                    plaintiffs in pro per

11

12
     _____          _____
13   Matthew Dowd                    Peter Demian

14
     _____          _____
15   Edward LaGrossa                 Anthony Brown

16
     _____          _____
17   Nathan Pino                     Willie Lee Turner

18
     _____          _____
19   David Saltsburg                 Thomas Burrum Jnr.

20
     _____          _____
21   Jesse Brown                     Louie Garcia

22
     _____          _____
23   Rene Castro                     Marvin Sims

24

25

26

27

28

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>MATTHEW DOWD et al. | **DEFENDANTS**<br>CITY OF LOS ANGELES |
| **(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases): | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): |
| **(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No     ☐ **MONEY DEMANDED IN COMPLAINT:** $ _JURY_

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 USC 1983.   UNCONSTITUTIONAL STATUTES

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities /Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | ☒ 440 Other Civil Rights | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☒ No  ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:**   Case Number: CV09-6731

CV-71 (12/04)                     **CIVIL COVER SHEET**                     Page 1 of 2

FOR OFFICE USE ONLY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW DOWD, PETER DEMIAN, EDWARD LAGROSSA, ANTHONY BROWN, NATHAN PINO, WILLIE LEE TURNER, DAVID SALTSBURG, *2UMA DOGG* THOMAS BURRUM JNR, MARVIN SIMS, JESSE BROWN, LOUIE GARCIA, RENE CASTRO **PLAINTIFF(S)** | CASE NUMBER<br><br>CV09-6731 AHm (RZ) |
| V. | |
| CITY OF LOS ANGELES **DEFENDANT(S).** | **SUMMONS** |

TO:   THE ABOVE-NAMED DEFENDANT(S):   CITY OF LOS ANGELES

YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's ~~attorney~~
_____, whose address is:

10 ½ 27th Place
VENICE, CA 90291   FOR OFFICE USE ONLY

an answer to the ☑ complaint ☐_____ amended complaint ☐ counterclaim ☐ cross-claim
which is herewith served upon you within _70_ days after service of this Summons upon you, exclusive
of the day of service. If you fail to do so, judgement by default will be taken against you for the relief
demanded in the complaint.

Clerk, U.S. District Court

Dated: ___9/16/09___

By: _____

SEAL

Deputy Clerk

*(Seal of the Court)*

FOR OFFICE USE ONLY

*of 12.*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☑) | DEFENDANTS |
|---|---|
| *MATTHEW DOWD et al.* | *CITY OF LOS ANGELES* |

| (b) County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases): | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): |
|---|---|

| (c) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No       ☐ **MONEY DEMANDED IN COMPLAINT:** $ *JURY*

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

*28 USC 1983.   UNCONSTITUTIONAL STATUTES*

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities /Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | ☒ 440 Other Civil Rights | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☒ No  ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:**   Case Number: ___*CV09-6731*___

CV-71 (12/04)                    **CIVIL COVER SHEET**                    Page 1 of 2