1

2

3                                                          O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   MATTHEW DOWD; PETER DEMIAN;      )  Case No. CV 09-06731 DDP (SSx)
     EDWARD LA GROSSA; ANTHONY        )
12   BROWN; NATHAN PINO, WILLIE       )  **ORDER(1) GRANTING IN PART AND**
     LEE TURNER; DAVID ZUMA DOG       )  **DENYING IN PART DEFENDANT'S**
13   SALTSBURG; THOMAS BURRUM         )  **MOTION TO DISMISS AND (2)**
     JNR; MARVIN SIMS; JESSE          )  **GRANTING IN PART AND DENYING IN**
14   BROWN; LOUIE GARCIA; RENE        )  **PART PLAINTIFFS' MOTION FOR**
     CASTRO,                          )  **PRELIMINARY INJUNCTION**
15                                    )
                    Plaintiffs,       )
16                                    )  [Motions filed on October 8,
          v.                          )  2009, and October 16, 2009]
17                                    )
                                      )
18   CITY OF LOS ANGELES, a           )
     municipal corporation,           )
19                                    )
                    Defendant.        )
20   _____)

21

22   **I.   BACKGROUND**

23        The Venice Beach Boardwalk is a major tourist attraction in

24   the City of Los Angeles.  LAMC § 42.15(A)(1)(a).  It is

25   "historically significant as a traditional public forum for its

26   performance and visual artists, as well as other free speech

27   activity."  Id.  During the summer and on weekends, the Boardwalk

28   is filled with street performers, including "instrumental

musicians, singers, jugglers, acrobats, mimes, comics, magicians, prophets, fortune tellers, and other assorted entertainers." City of Los Angeles Dep't of Recreation & Parks, http://www.laparks.org/venice/venice.htm (last visited Nov. 8, 2009).  Plaintiffs, appearing pro se, are thirteen street performers and artists who make their living on the Venice Beach Boardwalk by, among other things, dancing, singing, painting, unicycling, playing music, as well as selling or accepting donations for items related to their performances, such as CDs, works of art, and T-shirts.

Over the years, the defendant the City of Los Angeles (the "City"), has adopted and amended a number of versions of Los Angeles Municipal Code ("LAMC") § 42.15, in order to address its concern that unregulated vending negatively effects the character, safety, and economic vitality of the Venice Beach Boardwalk and in response to litigation.  In 2005, the City suspended the 2004 version of § 42.15, in response to the legal challenge raised in Venice Food Not Bombs v. City of Los Angeles, No. CV 05-04998 DDP (SS) (C.D. Cal. 2005), and later adopted an amended version of the ordinance as part of a settlement agreement in 2006.  The settlement agreement was the culmination of intensive meetings and negotiations between the parties and community stakeholders, with the aid of the Court, in an effort to draft an ordinance that would address the City's concerns about unregulated vending while protecting the rights of those

who engage in activities protected by the First Amendment on Venice Boardwalk.

The City's adoption of the 2006 version of § 42.15 did not end all controversy concerning the vending ordinance and further litigation ensued.  On January 14, 2009, this Court ruled in Hunt v. City of Los Angeles, 601 F. Supp. 2d 1158, 1170-72 (C.D. Cal. 2009), that the 2004 version of LAMC § 42.15(C) was unconstitutionally vague, because the exception to the vending ban for "merchandise constituting, carrying or making a religious political, philosophical, or ideological message or statement which is inextricably intertwined with merchandise," presented "a real risk of arbitrary and discriminatory enforcement because it fail[ed] to provide sufficient guidance to those who would enforce it."  The Court did not reach the merits of the plaintiffs' facial void-for-vagueness challenge to a similar provision in the 2006 version of the ordinance, finding that the plaintiffs lacked standing to raise the claim.  Hunt, 601 F. Supp. 2d at 1175.

In the face of such litigation, the City again amended § 42.15, with the latest draft taking effect on May 19, 2008.  In enacting the 2008 version of LAMC § 42.15 , the City found that (1) tourists are deterred from visiting the Boardwalk because they are harassed by unregulated vendors, (2) the limited amount of space on the Boardwalk should be assigned in order to avoid frequent altercations, (3) vendors and their equipment impede the

ingress and egress of emergency and public safety vehicles, and

(4) unregulated vending creates excessive and annoying noise on

the Boardwalk that negatively affects nearby workers, visitors,

and residents.  Id. § 42.15(A)(1)(b)(i)-(vii).  In response to

these findings, LAMC § 42.15 (2008) provides that "[e]xcept as

specifically allowed in this section, no person shall engage in

vending" along the Venice Beach Boardwalk.  Id. § 42.15(A).

The latest version of the ordinance divides much of the

available space in the heart of the Boardwalk into individual

spaces designated as P-Zone spaces and I-Zone spaces.  Id. §

42.15(2).  In the P-Zone spaces, "persons can perform, engage in

traditional expressive speech, and petitioning activities, and

vend the following expressive items: newspapers, leaflets,

pamphlets, bumper stickers, patches, buttons, or books created by

the vendor or recordings of the vendor's own performances . . .

."  Id. § 42.15(2)(a).  In the I-Zone spaces, "persons may engage

in activities permissible in the P-Zone, and also engage in

vending of expressive items created by the vendor, or the vending

of expressive items that are inextricably intertwined with the

vendor's message . . . ."  Id. § 42.15(2)(b).

With certain limited exceptions, anyone wishing to use a P-

Zone or I-Zone space during Peak Season must apply for an annual

permit and enter into a lottery system by which spaces are

assigned each day.  Program Rules at pp. 2-3.  The person to whom

the space is assigned has priority to use the space.  But, after

4

12:00 p.m., anyone (with or without a permit) may use any unoccupied space, so long as she engages only in activities approved for the P-Zones and relinquishes the space to the permit-holder if she returns.

Outside of the P and I-Zones, anyone may engage in any activity permitted in the P-Zones and vend expressive items "inextricably intertwined with the vendor's message," so long as she does not "set up a display table, easel, stand, equipment, or other furniture, use a pushcart or other vehicle . . . ." Id. § 42.15(D)(1)(a).  On the West side of the Boardwalk, outside of the P and I-Zones, anyone can engage in any permitted P-Zone activity as long as it is "not vending and does not substantially impede or obstruct pedestrian or vehicular traffic, subject to reasonable size and height restrictions on any table, easel, or other furniture . . . ." Id. § 42.15(D)(1)(b).

The ordinance and Program Rules also include noise regulations.  LAMC § 42.15(F)(1) provides that noise levels must not exceed seventy-five decibels when measured at a distance of twenty-five feet away or ninety-six decibels when measured from one foot away between nine o'clock in the morning and sunset. Furthermore, LAMC § 42.15(F)(4) bans the use of amplified sound anywhere on the Boardwalk except in specially designated P-Zone spaces between 17th Avenue and Horizon Avenue and between Breeze Avenue and Park Avenue.  The Program Rules clarify that amplified sound "is permitted only in the designated spaces in the P-Zones

in the locations specified in Section 42.15 between 9:00 a.m. and sunset, and is prohibited after sunset and before 9:00 a.m." Program Rules at p. 4.

Following the City's adoption of the 2008 version of § 42.15, the Ninth Circuit decided Berger v. City of Seattle, 569 F.3d 1029 (9th Cir. 2009) (en banc), holding that a similar designated-performance-space and permitting system established by the City of Seattle for the Seattle Center was facially unconstitutional under the First Amendment.  In so holding, the court noted that the Supreme Court "has repeatedly concluded that single-speaker permitting requirements are not a constitutionally valid means of advancing [the government's] interests because, typically (1) they sweep too broadly, (2) they only marginally advance the government's asserted interests, and (3) the government's interests can be achieved by less intrusive means." Id. at 1038  (internal citations omitted).  While acknowledging that such Supreme Court decisions involved permitting requirements for door-to-door solicitation, the court held that "it stands to reason that such [single-speaker permitting] requirements would be at least as constitutionally suspect when applied to speech in a public park, where a speaker's First Amendment protections reach their zenith, than when applied to speech on a citizen's doorstep where substantial privacy interests exist."  Id. at 1039.  As a result, the court stated that it was "not surprising that we and almost every other

6

1  circuit to have considered the issue have refused to uphold

2  registration requirements that apply to individual speakers or

3  small groups in a public forum."   Id.

4      Shortly after the Ninth Circuit published its decision in

5  Berger, 569 F.3d at 1039, Plaintiffs filed this lawsuit raising

6  facial and as-applied challenges to the 2008 version of LAMC §

7  42.15 and its implementing Public Expression Permit Program Rules

8  ("Program Rules") (revised April 2, 2008), arguing that they

9  violate the First and Fourteenth Amendments.[1]   The facial

10 challenges to the 2008 ordinance at issue here appear to be

11 threefold:   First, Plaintiffs argue that the permitting and

12 designated performance space system is not a reasonable time,

13 place and manner restriction and grants unbridled discretion to

14 licensing authorities.   Second, Plaintiffs assert that the

15 ordinance's use of the phrase "inextricably intertwined" renders

16 it unconstitutionally vague.   Third, Plaintiffs claim that the

17 amplified sound ban is not a reasonable time, place, and manner

18 restriction.

19     In order to voice their concerns over the ordinance and its

20 enforcement, Plaintiffs Dowd and Saltsburg began attending Los

21 Angeles City Council meetings and speaking during public comment

22 sessions.   Plaintiffs Dowd and Saltsburg raise facial and as-

23 applied challenges to the City Council's Rules of Decorum.   With

---

[1]   Several Plaintiffs also claim that the enforcement of the prior version of LAMC § 42.15 (2006) violated their constitutional rights.  However, this aspect of the Complaint is not at issue with respect to either motion.

7

respect to their facial challenge, Plaintiffs argue that the Rules-- which prohibit making "personal, impertinent, unduly repetitive, slanderous, or profane remarks" and "utter[ing] loud, threatening, personal or abusive language"-- "are content based, vague, and thus do provide for discretionary enforcement based on subjective analysis by the City Council members." (Compl. ¶ 58.) With respect to his as-applied claim, Plaintiff Dowd claims that the City violated his First Amendment rights by ejecting him from a meeting after he stated during a public comment session that the President Pro Tempore was "pathetic and hopeless and is not doing a very good job" and complained about the "inextricably intertwined" language in the ordinance because "there's no guidelines for what that fucking means." (Leung Decl. ¶ 7.) Similarly, Saltsburg raises an as-applied claim because he was ejected from the same meeting after stating during public comment that one member of the Council was "one of the most shadiest, most troublesome, problematic council members in the history of the city itself . . . ." (<u>Id.</u>)

**II.  MOTION TO DISMISS**

On October 8, 2009, the City filed a motion to dismiss the facial challenges to LAMC § 42.15 (2008) on the grounds that the ordinance is constitutional on its face.  For the reasons discussed further below with respect to Plaintiffs' motion for a preliminary injunction, the Court concludes that Plaintiffs' facial challenges to the permitting system and the amplified

sound ban have merit.  Therefore, the motion to dismiss is DENIED

with respect to those claims.  However, because Plaintiffs' lack

standing to raise a facial challenge to the vending ban on

vagueness grounds, the Court GRANTS the motion to dismiss with

respect to that claim.

### A.   Legal Standard

A complaint will survive a motion to dismiss when it

"contain[s] sufficient factual matter, accepted as true, to state

a claim to relief that is plausible on its face." Ashcroft v.

Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  When considering a 12(b)(6)

motion, a court must "accept as true all allegations of material

fact and must construe those facts in the light most favorable to

the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir.

2000).  Although a pleading need not include "detailed factual

allegations," it must be "more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949.

Conclusory allegations or allegations that are no more than a

statement of a legal conclusion "are not entitled to the

assumption of truth." Id. at 1950.  Where, as here, the

plaintiff is proceeding pro se, the Court applies the motion to

dismiss standard against the backdrop of the general rule that

courts liberally construe the pleadings of pro se litigants.  See

Haines v. Kerner, 404 U.S. 519, 520 (1972).

**B.    Facial Void-for-Vagueness Challenge**

The City moves to dismiss Plaintiffs' facial, void-for-vagueness challenge to LAMC § 42.15(C)'s vending ban.  Plaintiffs appear to challenge the vending ban on the grounds that its exception for expressive items that are "inextricably intertwined" with the speaker's message renders the regulation unconstitutionally vague.

"A government regulation may be unconstitutionally vague for two reasons.  First, the regulation may fail to give persons of ordinary intelligence adequate notice of what conduct is proscribed; second, it may permit or authorize 'arbitrary and discriminatory enforcement.'"  G.K. Ltd. Travel v. City of Lake Oswego, 436 F.3d 1064, 1084 (9th Cir. 2006) (citation omitted).  "'[T]hese vagueness concerns are more acute when a law implicates First Amendment rights and, therefore, vagueness scrutiny is more stringent.'"  Id. (quoting Cal. Teachers Ass'n v. State Bd. of Educ., 271 F.3d 1141, 1150 (9th Cir. 2001)).

In order to satisfy the Article III case or controversy requirement, a plaintiff must establish that it has suffered a constitutionally cognizable injury-in-fact.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (stating that the "irreducible constitutional minimum of standing contains three elements: (1) injury-in-fact, (2) causation, and (3) a likelihood that a favorable decision will redress plaintiff's injury").  It is true that with respect to laws that implicate First Amendment

10

rights, "[i]n an effort to avoid the chilling effect of sweeping restrictions, the Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences." Cal. Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1094 (9th Cir. 2003) (quotation marks and citation omitted).  Thus, a plaintiff will have standing to challenge a vague statute if she has "suffered the constitutionally recognized injury of self-censorship." Id. at 1095.

But, the Ninth Circuit has not "suggest[ed] that any plaintiff may challenge the constitutionality of a statute on First Amendment grounds by nakedly asserting that his or her speech was chilled by the statute.  The self-censorship door to standing does not open for every plaintiff." Id. Rather, "[t]he potential plaintiff must have 'an actual and well-founded fear that the law will be enforced against him or her.'" Id. (internal citation and alteration omitted).  "In the free speech context, such a fear of prosecution will only inure if the plaintiff's intended speech arguably falls within the statute's reach." Id.

Here, the Court concludes that Plaintiffs lack standing to challenge the vending ban as void for vagueness.  First, the Plaintiffs engage in activities that do not fall within the ambit of the anti-vending regulations, as they are street performers who engage in traditional expressive speech, vend expressive

items they have created, and sell recordings of their own performances.  In fact, none of the Plaintiffs claims to have been chilled from performing or vending any items based on the anti-vending regulations; rather, they all claim to have been chilled by discriminatory enforcement of <u>other</u> provisions of the ordinance not at issue here.  (<u>See, e.g.</u> Compl. ¶ 47 ("Saltsburg has quit performing at Venice Beach" after being "harassed by the police for performing on a street"); <u>id.</u> ¶ 48 ("Demian has been forced to quit his expression at times, because upon arrival at the Boardwalk, he finds spaces filled, and the queue of waiting performers would stretch beyond sunset, whereupon his performance would be in violation of the rules").)

Insofar as the Plaintiffs allege they have suffered any injury at all based on the ordinance's use of the phrase "inextricably intertwined," they complain that the City "has oversubscribed the I zone lottery, with vendors who may or may not qualify as 'intertwined,'" and that, as a result, "many of the more traditional vendors who sell . . . photos and paintings, have moved back into the P zone, into the P zone lottery, and are taking spaces which are amplifier only blocks."  (Compl. ¶ 25.) In other words, Plaintiffs have not claimed that they are chilled from engaging in expressive activity because they fear that the vending ban will be enforced against them.  Rather, they apparently fear that it is not being enforced with sufficient frequency against others, which results in increased competition

for the P-Zone spaces they seek to use.  This is not the type of injury that would permit Plaintiffs to challenge the vending ban on vagueness grounds.  Therefore, the Court GRANTS the City's motion to dismiss Plaintiffs' facial void-for-vagueness challenge to the vending ban and its exception for expressive items "inextricably intertwined" with the speaker's message.[2]

**II.   MOTION FOR PRELIMINARY INJUNCTION**

    **A.   Legal Standard**

The Supreme Court recently set forth the standard for assessing a motion for a preliminary injunction in <u>Winter v. Natural Resources Defense Council, Inc.</u>, - - - U.S. - - -, 129 S. Ct. 365, 376 (2008).  "Under <u>Winter</u>, plaintiffs seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest."  <u>Sierra Forest Legacy v. Rey</u>, 577 F.3d 1015, 1021 (9th Cir. 2009).

Following the Supreme Court's decision in <u>Winter</u>, the Ninth Circuit has re-affirmed the vitality of the "serious questions" approach to preliminary injunctions.  <u>Alliance for Wild Rockies v. Cottrell</u>, - - - F.3d - - -, 2010 WL 2926463 (9th Cir. 2010). "In other words, 'serious questions going to the merits' and a

---

[2]     However, insofar as the Plaintiffs argue that the permitting scheme grants unbridled discretion to licensing officials because of its incorporation of the "inextricably intertwined" standard, that claim survives the City's motion to dismiss.

hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." Id. at *4.

When the plaintiff seeks to enjoin a law or regulation that violates the First Amendment, the courts recognize that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). In addition, the Ninth Circuit has "consistently recognized the significant public interest in upholding free speech principles, as the ongoing enforcement of the potentially unconstitutional regulations would infringe not only the free expression interests of the plaintiffs, but also the interests of other people subjected to the same restrictions." Klein v. City of San Clemente, 584 F.3d 1196, 1208 (9th Cir. 2009). Therefore, if a plaintiff demonstrates that she is likely to succeed on her claim that the challenged law or regulation violates the First Amendment, a preliminary injunction should issue.

### A. Rules of Decorum

Plaintiff's seek a preliminary injunction "to enjoin enforcement of Rule 12 of the Los Angeles City Council Rules of Decorum" because it "contain[s] vague and impermissible terms, making [it] facially unconstitutional, and allow[s] for discretionary and arbitrary enforcement . . . ." (Pls.' Mot. 5:19-21.) Plaintiffs argue that Rule 12 is facially

unconstitutional because it is overbroad and vague.

The Court denies the motion for preliminary injunction because Plaintiffs are unlikely to succeed on the merits of their facial challenge to Rule 12.[3]  In <u>White v. City of Norwalk</u>, 900 F.2d 1421, 1424-25 (9th Cir. 1990), the Ninth Circuit upheld identical city council rules of decorum against a facial attack. Although the rules prohibited making "personal, impertinent, slanderous or profane remarks," the court construed the rules narrowly to permit removal only "when someone making a proscribed remark is acting in a way that actually disturbs or impedes the meeting," and held that "[s]o limited, we cannot say that the ordinance on its face is substantially and fatally overbroad." <u>Id.</u> at 1424, 1426.  In addition, the court held that "[t]he same narrowing construction defeats the plaintiffs' contention that the terms 'personal, impertinent, slanderous, or profane' are unconstitutionally vague."  <u>Id.</u> at 1426 n.6.

Because Plaintiffs' facial challenge to the rules of decorum is unlikely to succeed on the merits, a preliminary injunction is not warranted.

**B.   Amplified Sound Ban**

Plaintiffs also seek a preliminary injunction enjoining the amplified sound ban.  The use of a sound amplification device is protected by the First Amendment.  <u>Saia v. New York</u>, 334 U.S.

---

[3]   Plaintiffs Saltsburg and Dowd also raise as-applied challenges based on two incidents in which they were ejected from City Council meetings, and the Court expresses no opinion on the merits of those claims.

558, 561 (1948).  Although Plaintiffs bear "the general burden of establishing the elements necessary to obtain injunctive relief, the City has the burden of justifying the restriction on speech." Klein v. City of San Clemente, 584 F.3d 1196, 1201 (9th Cir. 2009).  In order for a regulation of amplified sound to comport with the First Amendment, it must (1) be "'justified without reference to the content of the regulated speech,'" (2) be "'narrowly tailored to serve a significant government interest,'" and (3) "'leave open ample alternative channels for communication of the information.'"  Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (quoting Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293 (1984)).

In this case, LAMC § 42.15(F)(4) and the Program Rules ban the use of amplified sound anywhere on the Boardwalk except in specially designated P-Zone spaces between 17th Avenue and Horizon Avenue and between Breeze Avenue and Park Avenue. Plaintiffs assert that LAMC § 42.15 and the Program Rules "den[y] the use of amplifiers on twelve out of seventeen blocks on the Boardwalk."  (Compl. ¶ 19.)  "The eight most northern blocks of Venice Boardwalk have a complete ban on amplified music."  (Id.) Because "all of the five 'amplifier allowed' blocks are designated within the P zone, all musicians and performers who use an amplifier must vie for space within those five blocks."  (Id.)  Only fifty-six spaces out of the 205 total spaces on the Boardwalk permit the use of amplified sound.  (Id. ¶ 21.)

Plaintiffs argue those fifty-six spaces do not provide ample alternatives because, "[m]any of the amplifier prohibition blocks contain . . . cafes where Plaintiffs were performing with permits issued by the City prior to May 2008." (<u>Id.</u> ¶ 19.)

The Court concludes that Plaintiffs are likely to succeed on the merits of their claim that the amplified sound ban is overbroad.  The amplified sound ban is content-neutral on its face.  But, even assuming that it leaves open ample alternative channels for communication, it is not "narrowly tailored to serve a significant government interest." <u>Ward</u>, 491 U.S. at 791 (internal quotation marks and citation omitted).

The government has an interest in protecting its citizens from excessive noise that constitutes a public nuisance. <u>Kovacs v. Cooper</u>, 336 U.S. 77, 87 (1949).  Furthermore, the government has a "significant interest in protecting the integrity of the home and a person's feelings of well-being, tranquility, and privacy.'" <u>United States v. Doe</u>, 968 F.2d 86, 88-89 (D.C. Cir. 1992)(quoting <u>Frisby v. Shultz</u>, 487 U.S. 474, 477 (1988)).  And yet, nothing in the Supreme Court's decisions concerning the government's interest in promoting tranquility "remotely suggests the existence of any generalized government interest in maintaining the same level of quiet in all public spaces." <u>Id.</u> at 89.  "Indeed, the very concept of a situs being designated as a 'public forum' for First Amendment purposes presupposes that the situs has 'been used for purposes of assembly, communicating

17

thoughts between citizens and discussing public questions.'" Id.
(quoting Haque v. CIO, 307 U.S. 496, 515-16 (1939)).

The City asks the Court to take judicial notice of the fact
that the portions of Venice Boardwalk subject to the amplified
sound ban are adjacent to residential areas, and argues that it
has a significant interest in "ensuring the safety and enjoyment
of its residents." (Def.'s Opp'n 17:3-8.) In support of its
position, the City cites Kovacs, 336 U.S. at 87, in which the
Court upheld a restriction on amplified sound emanating from
trucks insofar as such sound was loud and raucous. The Court is
not convinced that the government's interest in regulating noise
is a significant interest when it comes to a traditional public
forum like Venice Boardwalk. But, even assuming for the sake of
argument that protecting residents from excessive noise emanating
from the Boardwalk is a significant interest, the total ban on
amplified sound at all hours on the Boardwalk is not narrowly
tailored to serve that interest.

The ban on amplified sound on the Boardwalk does not appear
to materially advance the City's interest in protecting
neighboring residents from unwelcome noise. Plaintiffs argue
that the locations in which they are banned from using amplified
sound "are still noisy because the bars, cafes and shops along
those blocks employ live music or blare out prerecorded music . .
. ." (Pls.' Mot. 16:20-24.) Indeed, it appears that the
ordinance applies to public beach lands, beach properties

adjoining the waterfront, and immediately adjacent boardwalks, sidewalks or public ways, LAMC § 42.15(A), but not to the stores and restaurants that are located on or near the Boardwalk. Furthermore, within the residential areas themselves, the operation of sound amplification equipment for noncommercial purposes is only prohibited between 4:30 p.m. and 9:00 a.m.   LAMC § 115.02.   As a result, while the plaintiffs would be perfectly free to actually enter the residential neighborhoods at issue and use sound amplification equipment prior to 4:30 p.m., they would be prohibited from using the same equipment farther away at the Boardwalk.   For these reasons, the amplified sound ban on the Boardwalk bears little relation to the stated purpose of protecting neighboring residents from excessive noise.

At the same time, the amplified sound ban "burdens substantially more speech than is necessary" to further the government's stated interest. Ward, 491 U.S. at 799.   The ban applies at all times, even during the day when many residents are likely at work or otherwise out of their homes.   In addition, the City already has several other, more narrowly tailored regulations of excessive noise that would apply in the absence of the amplified sound ban on the boardwalk.   See, e.g., LAMC § 41.57 (regulating loud and raucous noise).   The City has offered no explanation for why the existing regulations are not sufficient to protect nearby residents from excessive noise and,

if they are not, why the total ban on amplified sound on the
Boardwalk is narrowly tailored to achieve that end.

Other courts have struck down amplified sound restrictions
less sweeping than the total ban on amplified sound on the Venice
Boardwalk.  See, e.g., Deegan v. City of Ithaca, 444 F.3d 135 (2d
Cir. 2006) (holding noise regulation as applied to prohibit any
sound that could be heard 25 feet from its source in downtown
pedestrian mall was not narrowly tailored); Doe, 968 F.2d at 89
(holding regulation prohibiting operating an audio device in a
manner exceeding 60 decibels at 50 feet was not narrowly tailored
as applied to Lafayette Park because "[b]y no reasonable measure
does Lafayette Park display the characteristics of a setting in
which the government may lay claim to a legitimate interest in
maintaining tranquility"); Beckerman v. City of Tupelo, Miss.,
664 F.2d 502, 516 (5th Cir. 1981) (holding ban on amplified sound
in residential zones overbroad because "the ordinance extends its
total and non-discretionary prohibition to areas which have not
been shown to be incompatible with sound equipment"); Reeves v.
McConn, 631 F.2d 377, 384 (5th Cir. 1980)(holding amplified sound
ban in downtown business district was not narrowly tailored
because "there is probably no more appropriate place for
reasonably amplified free speech than the streets and sidewalks
of a downtown business district"); Burbridge v. Sampson, 74 F.
Supp. 2d 940, 951 (C.D. Cal. 1999) (Collins, J.) (granting
preliminary injunction against rule banning amplified sound on

community college campus except in three "preferred areas"
because the defendants "failed to rebut Plaintiffs' claim that
the 'preferred areas' do not meet the 'ample alternatives for
communications' requirement for reasonable content-neutral, time
place, and manner regulation"); <u>Lionhart v. Foster</u>, 100 F. Supp.
2d 383 (E.D. La. 1999) (holding that law "regulat[ing] the
production of sound in excess of 55 decibels within 10 feet of
hospitals or churches during posted services" was "unreasonably
overbroad in the context of normal activities on public streets
and in public parks").

Of course, even in a traditional public forum, reasonable
restrictions on the use of amplified sound are permitted, so long
as they are narrowly tailored to serve a significant government
interest.  But, because "streets, sidewalks, parks and other
similar public places are so historically associated with the
exercise of First Amendment rights . . . access to them for the
purpose of exercising such rights cannot constitutionally be
denied broadly and absolutely." <u>Hudgens v. NLRB</u>, 424 U.S. 507,
515 (1976) (quotation marks and citation omitted).  The City's
absolute ban on the use of amplified sound twenty-four hours per
day on the Boardwalk except in a limited number of specially
designated spaces simply sweeps too broadly and does not
materially advance the City's proffered interest.

Because Plaintiffs are likely to succeed on their claim that
the amplified sound ban is facially overbroad (and because, as

21

mentioned earlier, the balance of hardships and the public

interest weigh in favor of enjoining regulations that violate the

First Amendment), the Court GRANTS Plaintiffs' motion for

preliminary injunction with respect to LAMC § 43.15(F)(5).

### C.   Permit and Lottery System

Plaintiffs seek to enjoin the permit and lottery system on

the grounds that it is an unconstitutional prior restraint.

Plaintiffs argue that the permitting system (1) grants unbridled

authority to "issue permits under the vague term 'inextricably

intertwined' which lacks guidance for issuance, denial and

enforcement," (Pls.' Mot. 13:5-7) and (2) violates Plaintiffs'

right to engage in anonymous and spontaneous speech, (id. 18:15-

20).

The Ninth Circuit recently struck down a similar, though not

identical, permit system employed by the Seattle Civic Center in

Berger, 569 F.3d at 1029.  In 2002, the Seattle Center issued

rules requiring street performers to obtain permits before

performing at the Center and to wear a badge displaying the

permit while performing, as well as a rule limiting street

performances to sixteen designated locations, available on a

first come first served basis.  The Court noted that "[t]he

presumptive invalidity and offensiveness of advance notice and

permitting requirements stem from the significant burden that

they place on free speech," in terms of procedural hurdles, as

well as limitations on anonymous and spontaneous speech.  Id. at

1037-38.   Further, the Court observed that "the Supreme Court has
consistently struck down permitting systems that apply to
individual speakers- as opposed to large groups- in the one
context in which they have been put in place with some
regularity: solicitation of private homes." <u>Id.</u> at 1038.   Thus,
"[a]lthough the Supreme Court has not addressed the validity of
single-speaker permitting requirements for speech in a public
forum," the Ninth Circuit held that "it stands to reason that
such requirements would be at least as constitutionally suspect
when applied to speech in a public park, where a speaker's First
Amendment protections reach their zenith, than when applied to
speech on a citizen's doorstep, where substantial privacy
interests exist." <u>Id.</u> at 1039.

     The court held that the Center's permitting requirement
failed the narrow tailoring requirement for several reasons.   <u>Id.</u>
at 1041. The court rejected the argument that the permitting
system promoted the government's interests in (1) deterring
wrongful conduct by threatening the loss of a permit and (2)
identifying rulebreakers and notifying them of alleged
violations.   The Court held that such goals could be accomplished
just as effectively by requiring a person observed violating the
rules to identify herself and an after-the-fact penalty, such as
the loss of the right to perform or a fine.   The court held that
the permitting system was an impermissible prior restraint
because the "state could achieve its purported goal of protecting

its citizens from wrongful conduct by punishing only actual

wrongdoers, rather than screening potential speakers . . . ."

Id. at 1044.

The Court noted, however, that "[a]lthough we do not uphold

the Center's designation of sixteen performance locations in the

present record . . . we also hold that the delineation of

performance areas, particularly in the most sought-after locales,

might pass constitutional muster on a more developed factual

record." Id. at 1045. "If so, a valid designated-location plan,

in combination with the City's existing first-come-first-served

rule, would achieve the same improvements in the coordination of

multiple uses without a permitting system as it would with one."

Id. "Conversely, if the designation of performance locations is

not constitutionally valid, then the permitting scheme cannot be

justified as enhancing the enforcement of an invalid

designation." Id.

The permitting and lottery system in this case differs in

several respects from the system struck down in Berger. First,

street performers may still perform anywhere else on the

Boardwalk, although they are limited in terms of what items they

can use (i.e., push-carts and tables). Second, the lottery

system assigns spaces to a particular person (or large

performance group) for a particular day. However, after 12:00

p.m. each day any person, with or without a permit, may use an

unoccupied P-zone space and any person with an I-zone permit may

use an unoccupied I-zone space, so long as she relinquishes the space should the lottery winner return.  Third, insofar as an applicant seeks an I-zone permit, she is required to disclose (1) her name and mailing address, (2) a description of the goods or merchandise for which she seeks a permit, and (3) a declaration that the goods or merchandise are expressive items inextricably intertwined with the applicant's message.

In light of the Ninth Circuit's ruling in <u>Berger</u>, the Court concludes that Plaintiffs are likely to establish that the permitting system is not narrowly tailored to promote a significant government interest.  The Court is mindful of the fact that the City has made significant efforts to bring the ordinance into compliance with the First Amendment, and the Court has been involved in that process through settlement negotiations in prior litigation.  However, intervening authority makes it likely that the permitting system fails constitutional muster.

The Ninth Circuit in <u>Berger</u> expressly rejected the City's argument that the permitting system advances its interest in deterring wrongful conduct and identifying wrongdoers.  <u>Id.</u> at 1043-44.  The purposes of the permitting requirement are to (1) "regulate the use of the limited space on the Boardwalk to prevent conflicting claims for the space and to allocate the limited space available fairly to all who desire to use it for lawful purposes," and (2) address a multitude of problems associated with unregulated commercial vending on the Boardwalk.

LAMC § 42.15(A)(1)(a)-(b).  But, as the Ninth Circuit observed in
Berger, 569 F.3d at 1045, "a valid designated-location plan, in
combination with [a] first-come-first-served rule, would achieve
the same improvements in the coordination of multiple uses
without a permitting system as it would with one."  This is
especially so in light of the fact that anyone (with or without a
permit) is entitled to use an empty P-zone space on a first-come-
first-served basis after 12:00 p.m., so long as she relinquishes
the space to the permit holder if she returns.  There is no
explanation as to why this system manages conflicting claims to
limited space any more effectively than a simple first-come-
first-served rule.  Insofar as the City wishes to deter
unregulated vending, "the City need not rely on a pre-
registration scheme to determine the identity and addresses of
problematic" vendors, nor would a system of after-the-fact
enforcement of the anti-vending regulations be any less effective
than a pre-screening requirement.  Id. at 1044-45.

In light of the Ninth Circuit's decision in Berger, 569 F.3d
at 1044-45, the Court concludes that the permit requirement is
likely to violate the First Amendment and that, as a result,
Plaintiffs are entitled to a preliminary injunction enjoining the
permit requirement.  The Court therefore need not address
Plaintiffs' alternative argument, that the permitting scheme
grants unbridled discretion to licensing officials.

**500. MISCELLANEOUS PROVISIONS**

Plaintiffs seek to enjoin various other provisions of LAMC § 42.15, including the prohibition on setting up or taking down in a designated space before 9:00 a.m. and after sunset, the prohibition on using items over a certain height within the performance spaces, and the provision that groups in the large act performance spaces may be rotated every hour.  Plaintiffs have not demonstrated, at this stage, that they are likely to succeed on the merits of their facial challenges to those provisions and therefore DENIES the motion for preliminary injunction as to them.

**III. CONCLUSION**

For the foregoing reasons, the City's motion is GRANTED IN PART and DENIED IN PART and Plaintiffs' motion for preliminary injunction is GRANTED IN PART AND DENIED IN PART.  The Court dismisses Plaintiffs' claim that LAMC §42.15(C)'s vending ban is void for vagueness because Plaintiffs lack standing to raise such a claim.  The Court GRANTS Plaintiffs' motion for preliminary injunction with respect to (1) the amplified sound ban and (2) the permitting and lottery system.  The Court orders Defendant to submit a proposed preliminary injunction consistent with this Order forthwith.

IT IS SO ORDERED.

Dated: October 21, 2010

_____
DEAN D. PREGERSON
United States District Judge